IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LORENZO BYRD**, on behalf of **TOMMY L. BYRD**, an incompetent adult,<br>    Plaintiff<br>vs.<br>**UNITED STATES OF AMERICA**,<br>    Defendant | **NO. 1:20-CV-03090-LMM** |

# PLAINTIFFS' REPLY TO THE GOVERNMENT'S RESPONSE TO PLAINTIFF'S MOTION TO APPOINT GUARDIAN

Rule 17(c)(2) allows the Court to appoint a guardian "or issue other appropriate order" to protect to protect a person who does not have a "duly appointed representative." Rule 17(a)(3) prevents the Court from dismissing an action without first allowing the real party in interest to "ratify, join, or be substituted into the action." The Government's response asks the Court to rewrite both rules and create new requirements under the Federal Tort Claims Act (FTCA).

## JURISDICTION

In its response, the Government argues that Mr. Byrd did not properly present his administrative claim under the FTCA. Then, the Government argues that Mr. Byrd is not a party to this lawsuit. Dkt. No. 28, at 11–12. On both counts—both legally and factually—the Government gets it wrong.

1. *The FTCA administrative presentation requires minimal notice.*

For the FTCA, the claimant needs only to present (1) a written statement sufficiently describing the injury so the agency may begin its own investigation, and (2) a sum-certain damages claim. *Free v. United States*, 885 F.2d 840, 842 (11th Cir. 1989). In fact, "an FTCA notice of claim need not be filed by a party with the legal authority or capacity under state law.… State-law authority or capacity to represent beneficiaries is not required." *Pleasant v. United States*, 764 F.3d 445, 451(5th Cir. 2014) (holding).

Multiple cases from multiple circuits reject the Government's heightened presentation requirements. For example, the question presented in *Avila* was whether the "administrative filing in the name of an adult incompetent by his father and signed by the father for the son" adequately exhausts administrative remedies where "no conservator has been appointed for the incompetent" nor is there written authorization of the father to act on behalf of the son. *Avila v. INS*, 731 F.2d 616, 619 (9th Cir. 1984). The circuit court held that the father properly presented the son's claim given the "minimal requirements" of presentation. *Id.*; *see also Conn v. United States*, 867 F.2d 916, 919 (6th Cir. 1989) (claim properly presented even though claimant "did not satisfy the regulation requiring documentation of the authority of the person filing on his behalf."); *Campbell v. United States*, 534 F. Supp. 762, 764–65 (D. Hawai'i 1982) (husband properly presented his disabled wife's claims when he was not appointed guardian ad litem until after the lawsuit was filed).

Next, in *Free v. United States*, the Government argued that Georgia law required the claim "must be brought by a[n appointed] representative of the deceased's estate." 885 F.2d 840, 842 (11th Cir. 1989). Because Mr. Free's

siblings were not appointed until after the statute of limitations run, the Government argued that they had not properly presented the claim. *Id.* at 841–42. The Eleventh Circuit rejected this argument because Mr. Free's siblings "gave sufficient notice to allow [the agency] to investigate the claim" and the claim "stated a sum certain for recovery." *Id.* at 842–43; *see also Tansco Leasing Corp. v. United States*, 896 F.2d 1435, 1442 (5th Cir. 1990) (holding that a bank's submission of a FTCA wrongful-death claim on behalf of widow and daughter met the minimal notice requirements); *Byrne v. United States*, 804 F. Supp. 577, 582 (S.D.N.Y. 1992) (Even though plaintiff was not appointed personal representative of the decedent, his claim still satisfied the "minimal notice" requirements for jurisdiction.).

Or take *Bryant v. United States*: there, the court found that an attorney sending a letter identifying only the existence of "three brothers" was sufficient to present the sibling's consortium claims. 147 F. Supp. 2d 953, 961 (D. Ariz. 2000); *see also Young v. United States*, 372 F. Supp. 736, 741–42 (S.D. Ga. 1974) (claim filed for children by a purported guardian without proof of legal capacity or authority does not deny the district court of jurisdiction).[1] Finally, the Court may rely on numerous analogous cases in which attorneys file claims without proof of representation. *E.g., Warren v. United States*, 724 F.2d 776, 777 (9th Cir. 1984).

---

[1] Like *Young*, there are a line of cases where courts examine prejudice to the Government in this situation. Here, there is no prejudice to the Government. First, changing the caption of this lawsuit does not alter the substantive allegations in any way. Second, since the outset of the lawsuit, the Complaint has identified both Mr. Lorenzo Byrd and Mr. Tommy Byrd as parties. Complaint, Dkt. No. 1, at 1 ¶ 1.1 (Aug. 24, 2020). Third, even the Government, in its most recent round of discovery, identifies the Plaintiff as Mr. Tommy Byrd. Exh. 1, Excerpts from Government's Discovery Requests (Dec. 23, 2020).

2.  *Mr. Byrd fulfilled all administrative conditions precedent.*

Tommy Byrd's claim sufficiently identified him and gave notice such that the Government could begin its investigation. As proof "Mr. [Tommy] Byrd did not file a claim in his own name," the Government attaches only six pages of Mr. Byrd's 211-page administrative claim. Dkt. No. 28, at 2; Dkt. No. 28-1 (Gov't exhibit). There, the box that the Government cites on the Standard Form 95 asks for the "Name, address of claimant **and** claimant's personal representative." Dkt. No. 28-1, at 1 (emphasis added). So, naturally, both Mr. Lorenzo and Tommy Byrd's names should appear in that box. But to be clear, "neither a Form 95 or any other particular form is required." *Williams v. United States*, 693 F.2d 555, 557 (5th Cir. 1982) (cleaned up).

Nevertheless, to reach the result the Government wishes, the Court needs to ignore the rest of the 211-page administrative claim. For example, even the pages that the Government does attach states, "This claim concerns the substandard medical care delivered to Tommy Lorenzo Byrd." Dkt. No. 28-1, at 3. And they state that Tommy Byrd seeks recovery of his damages. *Id.* at 6. Moreover, the first page of the claim, the cover letter, clearly present the claims of both father and son. Exh. 2, Presentation Letter, NTL-4565 (Aug. 17, 2017). The other 200 pages are excerpts from Tommy Byrd's medical records and other supporting documentation.

Finally, the Government's conduct also shows appropriate presentation. For example, in accepting presentation of the claim, the Government acknowledges the "Administrative Tort Claim of Mr. Tommy L. Byrd." Exh. 3, Acknowledgement Letter, NTL-4783–84 (Sept. 13, 2017). And since this claim was administratively adjudicated, parties knew that the claims of Mr. Tommy Byrd were at issue. *E.g.*, Exh. 4, Denial Letter, NTL-4787–88 (May

14, 2020) (denying Mr. Tommy Byrd's claim); *see also* Dkt. No. 1, at 4 ¶¶ 4.1–4.2 (Complaint alleging the claims were properly presented); Dkt. No. 17, at 7 ¶¶ 4.1-4.2 (Answer admitting allegations).

3. *Mr. Byrd is a party to this lawsuit.*

Next, the Government argues Tommy Byrd is not a party to this lawsuit. If the Government's argument held water, then **no court** could ever appoint a guardian under Rule 17(c)(2) because that rule has two conditions precedent: (1) the incompetent person does not already have a duly appointed representative and (2) the incompetent person is suing via a next friend. The Government's position would not explain the cases where a next friend brings a suit on behalf of another and the court appoints a guardian or takes other action. *E.g.*, *John v. Royal Caribbean Cruises, Ltd.*, 07-22766-CIV, 2008 WL 11407174, at *1 (S.D. Fla. June 11, 2008). The *John* case was styled like this case and, there, the court allowed the Plaintiff to amend its complaint to make next friend status clear. *Id.* at *3–4. The court even noted that, "this result is consistent with Rule 17's express intent to avoid forfeiture of facially sufficient claims. Indeed, under Rule 17(a)(3), I cannot dismiss an action without first giving Ms. John an opportunity to amend and name the real party in interest." *Id.* at *3.

The Government cites one lone case from Florida for the proposition that Mr. Byrd is not a party. *See* Dkt. No. 28, at 11–12 (citing *Williams v. Billy*, No. 18-23529-cv-SCOLA, 2019 WL 2516590, at *2 (S.D. Fla. June 3, 2019). Yet, *Williams* does not mention the Government's proposition. Instead, *Williams* dismissed the next friend solely because the next friend had no legal counsel. *Williams*, 2019 WL 2516590, at *2 ("Even if Dawn Grasty could

establish that she should be permitted to proceed as 'next friend' she is not be permitted to proceed pro se."); *see also Gallo v. United States*, 331 F. Supp. 2d 446, 448–49 (E.D. Va. 2004) (requiring pro-se guardian of child to retain counsel to proceed). But even if Mr. Byrd is not a party to this lawsuit, Rule 17(a)(3) requires the Court to allow a reasonable time to "join or be substituted into the action." After such "joinder or substitution, the action proceeds as if it had been originally commenced by" Mr. Byrd. Fed. R. Civ. P. 17(a)(3).[2]

In sum, Mr. Byrd properly put the Government on notice of his claim and is properly before the Court.

## CAPACITY

Here, the Government incorrectly identifies the choice of law and creates new requirements for Rule 17 found nowhere in the text or the cases. First, Maryland law governs this issue. Second, Mr. Byrd meets the capacity test under Maryland law. And third, whether Maryland law or Georgia law, there's no state-court adjudication condition precedent to Rule 17.

---

[2] The Government cites Rule 15—and two cases interpreting Rule 15—and argues for a heightened relation-back standard. Dkt. No. 28, at 9 n.2. Neither Rule 15 nor those cases apply because Rule 17 has its own relation back provision for this specific situation. Fed. R. Civ. P. 17(a)(3). Instead, Rule 17's 1966 advisory committee notes state that it is "intended to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of *Levinson v. Deupree*, 345 U.S. 648 (1953)." *Levinson* allowed relation-back where a party was not properly appointed administrator of the estate until after statute of limitations. *Levinson*, 345 U.S. at 649. In this case, an inadvertent miscommunication between counsel and clients led to this situation. To hold for the Government would result in the exact forfeiture and injustice Rule 17 is intended to prevent.

1. *Choice of law under Rule 17.*

At the outset, Maryland—not Georgia—determines Mr. Tommy Byrd's capacity. That's because "for an individual who is not acting in a representative capacity, the law of the individual's domicile" determines capacity to sue. Fed. R. Civ. P. 17(b)(1); *Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004) ("Rule 17(b) provides that issues of capacity are determined by the law of the individual's domicile."); Complaint, Dkt. No. 1, at 1 ¶ 1.2 (Mr. Tommy Byrd resides in Maryland); Dkt. No. 26-2, at 1 ¶ 3 (same).

Under Maryland Law, an individual "under disability to sue may sue by a guardian or other like fiduciary or, if none, by next friend…" MD Rules, Rule 3-202(d). In fact, under Maryland law, Mr. Byrd's power of attorney authorizes Lorenzo Byrd to "assert and maintain before a court … a claim [or] cause of action [to] recover damages sustained by the principal." Md. Code Ann., Est. & Trusts § 17-202. With a power of attorney, no adjudicated guardianship is necessary for an incompetent individual to bring a lawsuit.

Beyond that, there's no requirement of a probate proceeding declaring an incompetent. For example, a Maryland District Court, applying the Rule 17(c) standard, noted that capacity required "some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond 'something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders.'" *Lanahan v. Patuxent Inst.*, No. JFM-15-2511, 2017 WL 1592243, at *2 (D. Md. Apr. 28, 2017).

Further, under Maryland law, a guardian shall be appointed if (1) "a person lacks sufficient understanding or capacity to make or communicate responsible personal decisions," and (2) "no less restrictive form of intervention

is available that is consistent with the person's welfare and safety." Md. Code Ann., Est. & Trusts § 13-705.[3] But Maryland law does not require a formal finding or appointment of guardianship. For example, the appointment of a guardian is not evidence of incompetency. *Id.* § 13-706(b)(1). And Maryland law prioritizes the disabled person's children to be appointed as their guardians. *Id.* § 13-707(a)(6).

2. *Mr. Byrd meets the competency test under Maryland law.*

To be clear, this is not a case of diminished intellectual capacity. Instead, Mr. Byrd "lacks sufficient … capacity to … communicate" quickly and effectively as needed in a lawsuit. Md. Code Ann., Est. & Trusts § 13-705.

To rebut Dr. Altman's medical opinion, the Government offers a lone record. First, this record is from the same institution that caused him the brain injury in the first place. *See Malmberg v. United States*, 816 F.3d 185, 192 (2d Cir. 2016) (Federal law disfavors forcing the veteran to "seek medical care from the party whose negligence created his need for such care.").

More importantly, the Government neglected to include remainder of the record. There, the VA provider notes that he couldn't test Mr. Byrd because of his brain injury. Exh. 5, NTL-1816. Specifically, Mr. Byrd had difficulty with memory, understanding others, and expressing his own thoughts. *Id.* This record concludes that Mr. Byrd has "**Major neurocognitive disorder** due to vascular etiology [stroke]." *Id.* (emphasis added). The Government also

---

[3] While Maryland law spells out the procedure for appointing a guardian, courts "reject the notion that in determining whether a person is competent … a federal judge must use the state's procedures." *Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990). This is yet another reason federal courts need not wait until a person has been "adjudicated incompetent" before allowing suit.

implies that because Mr. Byrd's family cannot afford to forego employment to supervise Mr. Byrd at all times, Mr. Byrd is competent. First, one of the reasons for this lawsuit is medical and attendant care for Mr. Tommy Byrd. Second, Dr. Altman reviewed all of Mr. Byrd's medical chart, not just one page. Dkt. No. 26-1, at 1 ¶ 3 (Jan. 25, 2021). And the entire record paints a complete picture. For example, as of Nov. 2019, the VA concluded that Mr. Byrd's aphasia caused by stroke "affect[s] all language modalities with severely impaired comprehension." Exh. 6, USAO_BYRD_000329.

3. ***The Government's view of Rule 17 misses the mark.***

But whether under Maryland or Georgia law, the Government cannot point to *any* law that requires a formal state-court adjudication of capacity before a federal lawsuit. And any such law would directly conflict—and thus is preempted—by Rule 17(c)(2)'s language that allows a person "who does not have a duly appointed representative" to sue. Fundamentally, the Government asks the Court to add the words "adjudicated by state law" into the text of Rule 17. *See* Dkt. No. 28, at 6.

What's more, none of the Government's cases support the proposition that a state-court adjudication of competency is required. For example, the Government cites *Day v. RM Trucking, Inc*. In that case, a court refused a defendant's request to order an examination of a stroke patient who was "gainfully employed, driving a car, and attempting to live his life." No. 3:11–CV–400–J–20MCR, 2012 WL 12905596, at *3 (M.D. Fla. 2012); *but see contra John v. Royal Caribbean Cruises*, 07-22766-CIV, 2008 WL 11407174, at *1 (S.D. Fla. June 11, 2008) (denying motion to dismiss and allowing Plaintiff to amend complaint). While these Government cases show that this Court may

resolve this factual question of competency, they do not show that a state-court adjudication is required. *E.g.*, *Sanders v. Kansas*, 317 F. Supp. 2d 1233, 1239–40 (D. Kan. 2004) (because the plaintiff neither demonstrated incompetence nor was previously adjudicated incompetent, the court notes the next step is substitution of parties). The other cases that the Government cites stand for the proposition that *pro se* plaintiffs cannot bring suit representing another individual. *E.g.*, *Scarbrough v. Alabama*, No. 13–00110–WS–N, 2013 WL 6094675, at *2 (S.D. Ala. Nov. 20, 2013) (dismissing without prejudice because "no attorney has appeared on behalf of this pro se plaintiff.").

The Government also argues that Rule 17(a)(3) applies only a reasonable time after objection. Dkt. No. 28, at 12–13. While the brief recites "after objection" trigger to the "reasonable time" rule, it fails to note that the motion was filed **two days** after the Government raised this issue. *See* Dkt. No. 28-2 (attesting that the objection was raised on Saturday, Jan. 23); Dkt. No. 26 (motion filed Monday, Jan. 25th). Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application. *Esposito v. United States*, 368 F.3d 1271, 1278 (10th Cir. 2004) (reversing the district court's failure to substitute the real party in interest with relation back). Rule 17(a) requires the court to provide "a reasonable time after objection to substitute the real party in interest." *Id.* at 1272 (emphasis added).

## CONCLUSION

Plaintiff respectfully requests the Court exercise the broad range of relief offered by Rule 17. The Court may appoint Mr. Lorenzo Byrd as guardian ad litem or may fashion other appropriate relief, such as amending the

complaint. Fed. R. Civ. P. 17(c)(2). If the Court does not, however, the Court should allow a reasonable time for Mr. Tommy Byrd to "ratify, join, or be substituted into the action." *Id.* 17(a)(3).

        Respectfully Submitted,

        /s/ Tom Jacob
        **TOM JACOB**, *pro hac vice*
           tjacob@nationaltriallaw.com
           Texas State Bar #24069981
        **STEVEN HASPEL**, *pro hac vice*
           shaspel@nationaltriallaw.com
           Texas State Bar #24109981
        **WHITEHURST, HARKNESS,**
          **BREES, CHENG, ALSAFFAR,**
          **HIGGINBOTHAM, & JACOB P.L.L.C.**
        7500 Rialto Blvd, Bldg. Two, Ste 250
        Austin, TX 78735
        (512) 476-4346 (o)
        (512) 467-4400 (f)

        **NELSON O. TYRONE, III**
           nelson@tyronelaw.com
           Georgia State Bar #721189
        **TYRONE LAW FIRM**
           1201 Peachtree Street N.E.
           Atlanta GA, 30361
           (404) 377-0017 (o)
           (404) 249-6764 (f)

        Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE & COMPLIANCE

By my signature below, I certify that this pleading was prepared using Century Schoolbook at 13 point size. Further, I certify that a copy of this pleading, Plaintiffs' Reply to the Government's Response to Plaintiff's Motion to Appoint Guardian, has been sent to the following on February 12, 2021 via the Court's CM/ECF notice system.

**BYUNG J. PAK**
UNITED STATES ATTORNEY
**TRISHANDA L. TREADWELL**
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 356896
trish.treadwell@usdoj.gov
600 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303
(404) 581-6000
(404) 581-6150 facsimile

/s/ Tom Jacob
Tom Jacob
WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.