IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LORENZO BYRD**, on behalf of **TOMMY L. BYRD**, an incompetent adult,<br>  Plaintiff<br>vs.<br>**UNITED STATES OF AMERICA**,<br>  Defendant | NO. 1:20-CV-03090-LMM |

# PLAINTIFF'S SUR-SURREPLY TO GOVERNMENT'S SURREPLY TO PLAINTIFF'S MOTION

In this brief, Plaintiff addresses the Government's new arguments concerning FTCA jurisdiction and Rule 17(c). Before addressing these points, Plaintiff notes that the Government's surreply concedes three very important issues:

- First, the surreply never mentions the substitution of parties issue under Rule 17(a). That's because—if the Government is right about capacity and that Mr. Tommy Byrd is not a party, both disputed by Plaintiff—the Court should join and substitute him as a party. Fed. R. Civ. P. 17(a). And Rule 17(a) states that a "court may not dismiss an action" unless it first allows joinder or substitution of parties.

- Second, the Government now concedes that the law of the domicile determines capacity of Mr. Tommy Byrd. Dkt. No. 33, at 2, 4.

- Third, it concedes and acknowledges that a federal court, for the limited purposes of managing a lawsuit, may make a competence determination. Dkt. No. 33, at 5 ("there may be an occasion which compels a federal court to make a finding of incompetence").

## FTCA JURISDICTION

The Government does not address or even cite *Free* and *Avila,* which hold that no state or other authority is necessary for the presentation of an FTCA claim. *Free v. United States*, 885 F.2d 840, 842 (11th Cir. 1989); *Avila v. INS*, 731 F.2d 616, 619 (9th Cir. 1984) (allowing the claim of an adult incompetent son by father without authority or conservatorship); *see also* Dkt. No. 30, at 2 (Plaintiff's reply discussing these cases). In failing to grapple address this issue, the Government effectively concedes the applicability of those cases.

The only plausible contrary interpretation is the Government's citation of 28 C.F.R. § 14.3. Dkt. No. 33, at 8. But FTCA cases uniformly hold that claims are properly presented even though claimants "did not satisfy the regulation requiring documentation of the authority of the person filing on his behalf." *Conn v. United States*, 867 F.2d 916, 919 (6th Cir. 1989) (Although the filing "did not satisfy the regulation requiring documentation of the authority of the person filing … this failure does not render the form an ineffective presentment.") (citing cases); *Tansco Leasing Corp. v. United States*, 896 F.2d 1435, 1443–44 (5th Cir. 1990) (compliance with regulations is not required for jurisdictional presentation).

For example, the Northern District of Georgia holds that the failure of a claimant to present an administrative claim with authority, in violation of VA regulations, did not deny the court of subject-matter jurisdiction. *Larcheveaux v. United States*, No. 1:17-CV-656-MHC, 2017 WL 8292438, at *4–6 (N.D. Ga. Oct. 2, 2017); *Campeau v. United States*, No. 1:13–cv–3682–WSD, 2015 WL 1308282, at *12 (N.D. Ga. Mar. 23, 2015) (claim "was not required to be submitted by the person with standing under Georgia law to bring a lawsuit").

## RULE 17(C)

Plaintiff would respectfully show the Court: (1) the Government's misapplies the case law in its surreply; (2) the Government's standing analysis ignores *the* U.S. Supreme Court case on the issue; and (3) the Government asks this Court decide competency as a matter of law, when it's actually a factual question.

1.  ***The Government misapplies the case law.***

To begin, the Government's use of case law is inapplicable at best and misleading at worst. For example, it cites *Ferrelli*, which actually holds that district court judges have no *sua sponte* obligation to inquire into capacity of a *pro se* plaintiff. *Ferrelli v. River Manor Health Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003). Importantly, *Ferrelli* noted that "if the court received verifiable evidence from a mental health professional" that an individual had an incapacity, "it likely would be an abuse of the court's discretion **not** to consider whether Rule 17(c) applied." *Id.* (emphasis added). In this case, the Court has verifiable evidence from a neurologist demonstrating Mr. Byrd's incapacity in line with Maryland law. Dkt. No. 26-1 (Altman declaration); *see also infra*, at Section 3 (applying Maryland law). Similarly, the Government cites *Williams v. Rickman*, which actually stands for the proposition that an individual who is able to "adequately litigate his claims" does not require a trial court to "sua sponte appoint[] a guardian." 759 Fed. Appx. 849, 851 (11th Cir. 2019).

Then, the Government cites *Hundell* for the proposition that a state-court adjudication is necessary. Dkt. No. 33, at 4–5. But the case says the opposite. *Hundell* notes that the easy question is where, "obviously," a prior a legal adjudication of incompetence has been made. 800 F.2d 377, 384 (4th

Cir. 1988) (examining the competency law of Maryland to be sued). However, the Fourth Circuit contemplates the precise situation where district court may need to make a competency determination for an individual not already adjudicated incompetent. *Id.* at 384. The Fourth Circuit never reaches that question because the question presented—like *Williams* and *Ferrelli*—was: does the trial court abuse its discretion for failing to *sua sponte* inquire into the competence of a *pro se* litigant solely "on the basis of his conduct of record?" *Id.* at 386 (holding: of course not).

Sometimes, the cases cited by the surreply directly contradict the Government's position. *E.g.*, *Shankar v. United States*, No. 13–cv–01490, 2014 WL 523960, at *14 (N.D. Cal. Feb. 6, 2014) (in an FTCA action, the Court must "determine whether plaintiff is incompetent for the purposes of this action due to his mental disability, and if he is, whether he has a 'duly appointed representative' for the purpose of pursuing this action, or whether it is appropriate to appoint a guardian ad litem").

Other times, the Government cites cases involving *pro se* plaintiffs or where no developed record exists, and claims they are "very similar." *E.g.*, *Scarbrough v. Alabama*, No. 13–00110–WS–N, 2013 WL 6094675, at *3 (S.D. Ala. Nov. 20, 2013) (pro se plaintiff cannot represent another); *Sanders v. Kansas*, 317 F. Supp. 2d 1233, 1339 (D. Kan. 2004) ("the record before the court fails to show incompetence"). The "very similar" case, *Scarbrough*, exemplifies the Government's misapplication of the law. In that case, the court afforded the *pro se* Plaintiff the very relief sought here—the court allowed the plaintiff to proceed as next friend, but only if she got a lawyer within the court-ordered deadline. *Scarbrough v. Alabama*, No. 1:13-cv-00110-WS-N, at

3 (S.D. Ala. July 18, 2013) (Dkt. No. 5). But because plaintiff failed to get a lawyer, the Court dismissed. *Scarbrough*, 2013 WL 6094675, at *3.

Likewise, take *Caitlin*: the Government claims it's "procedurally indistinguishable." In *Caitlin*, the court dismissed the FTCA claim after plaintiff filed an administrative claim without a sum certain and did not wait six months prior to filing suit.[1] *Catlin v. United States*, No. 18-cv-322, 2018 WL 4204830, at *4 (S.D. Cal. Sept. 4, 2018). But even then, the Court allowed the plaintiff to amend her complaint as to the other claims. *Id.* at *5.

In sum, none of the Government's cases deny the Court the power to appoint a guardian ad litem or issue other "appropriate order." Fed. R. Civ. P. 17(c). And should the Court decline to issue such order, none of the Government's cases allow it to dismiss this case without an opportunity to "ratify, join, or substitute" Mr. Tommy Byrd into the action. *Id.* 17(a)(3).

## 2. *The Government misunderstands the law surrounding the standing of a next friend*

Having conceded the law of the domicile applies to Tommy Byrd, the Government moves the goal post and now argues that Georgia law applies to Mr. Lorenzo Byrd's capacity to sue. Dkt. No. 33, at 8–9 & n.4. In actuality, a next friend's ability to sue is a question of federal law and *Whitmore v. Arkansas* offers seminal rule. 495 U.S. 149 (1990); *see also* Dkt. No. 26, at 3–4 (Plaintiff's motion applying the *Whitmore* elements to this case).

---

[1] In this case, Mr. Byrd's administrative claim stated a sum certain (*see* Dkt. No. 28-1, at 1) and he timely filed his claim and lawsuit. *Compare* Dkt. No. 1, at 4 ¶ 4.1–4.2 (Complaint) *with* Dkt. No. 17, at 7 ¶ 4.1–4.2 (admissions).

*Whitmore* confines the question of jurisdictional standing to the real party in interest. *T.W. v. Brophy*, 124 F.3d 893, 896 (7th Cir. 1997). In *T.W.*, Judge Posner explained that if the real party has standing, next-friend standing "is not a separate issue of standing. Even allowing a complete stranger to bring suit in their name as their next friend because they cannot sue on their own behalf would not violate Article III." *Id.* (involving a complete stranger as next friend) (emphasis added). However, as a policy, the rule limits next friends to those that have significant relationship. *Id.*

In that context, *John v. Royal Caribbean Cruises, Ltd.* applies the *Whitmore* rule to an aphasic stroke case. No. 07-22766-CIV, No. 2008 WL 11407174 (S.D. Fla. June 11, 2008). Contrary to the Government's argument, what matters is not that there are other examples of the very specific factual issue presented in *John*, but whether other cases follow the *Whitmore* rule. And they do:

- *Ali Jaber v. United States*, 155 F. Supp. 3d 70, 75–76 (D.D.C. 2016) (reaching merits after applying *Whitmore* to allow next friend to prosecute on behalf of real parties who could not prosecute themselves due to war overseas).

- *AT&T Mobility v. Yeager*, 143 F. Supp. 3d 1042, 1051–54 (E.D. Cal. 2015) (this case surveys the rule around Rule 17(c), including the types of evidence that may be used by a federal court in competency determination, and the law and responsibilities of a guardian ad litem (or next friend) in contrast to a general guardian).

- *Gudavadze v. Kay*, 556 F. Supp. 2d 299, 301 n.2 (S.D.N.Y. 2008) (applying the *Whitmore* test and allowing the brother of a defendant to proceed as next friend where the individual was imprisoned overseas).

- *Bowen v. Rubin*, 213 F. Supp. 2d 220, 223 (E.D.N.Y. 2001) (the court appointed a next friend after plaintiff met New

> York law on competency using the declarations of psychiatrists).

And while Whitmore arose in the habeas context, the above cases and others have extended it to general civil litigation in interpreting Rule 17(c). *E.g.*, *Sam v. Carcieri*, 608 F.3d 77, 90 (1st Cir. 2010) (civil rights action); *Carson v. Heineman*, 240 F.R.D. 456, 516 (D. Neb. 2007) (citing cases).

So, the Court need only ask two questions: does the next friend provide "adequate explanation" for the real party's inability to prosecute his claim and does the next friend have a "significant relationship" with the real party? *Whitmore*, 495 U.S. at 163–64.[2]

### 3.   *The Government confuses the Maryland competency test*

Throughout its briefing, the Government conflates state-law competency required for a general guardian for the Rule 17 test. *E.g.*, Dkt. No. 33, at 2–3. But under federal law, "a guardian ad litem is not a general guardian." *AT&T Mobility LLC v. Yeager*, 143 F. Supp. 3d 1042, 1051 (E.D. Cal. 2015). Whereas the latter takes control of the person and estate, a guardian ad litem's role is limited to managing the lawsuit. *Id.* at 1051–52. A guardian ad

---

[2]   But even if federal law did not resolve this procedural question, Georgia allows an agent to bring suit using a power of attorney. Ga. Code Ann. § 10-6B-51 (2017); *see* Exh. 1, at 2 (Power of Attorney authorizing the maintenance of lawsuits). The Government's argument that the Mr. Byrd executed the power of attorney after his stroke conflates intellectual incapacity with all other types of incapacity. The case law is clear that even an individual without any physical disability may still be incapacitated for the purposes of effectively pursuing litigation. *E.g.*, *Ali Jaber*, 155 F. Supp. 3d at 76 (overseas war causes inability to access courts). And as Plaintiff demonstrated, Mr. Tommy Byrd's incapacity under Maryland law does not rely on his intellectual incapacity. Instead, his short-term memory problems and delayed comprehension require a representative to help him pursue his rights in this Court.

litem may either be a lawyer or a non-lawyer represented by counsel. *Id.* at 1052. But it's with the lens that a guardian ad litem is not a general guardian under state law, that Rule 17(c) examines the law of the domicile.

And to be clear, Maryland law defines disability in one of two ways. Either a person cannot "manage effectively" his property under section 13-201(c)(1) or health and safety reasons under section 13-705(b) require a guardian. Md. Code Ann., Est. & Trusts § 13-101(f).[3] And while Maryland law spells the procedure for appointing a general guardian, Maryland procedural law does not apply to the Rule 17(c) guardian ad litem question. *Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990).

Here, Mr. Byrd meets either test under Maryland law. Under the first test, a combination of short-term memory problems and difficulty quickly and easily reading prevent him from effectively managing his finances. Dkt. No. 26-1, at 1–2 ¶ 4 (Altman Declaration). And this lawsuit makes him a person "who has or may be entitled to property or benefits which require proper management." Md. Code Ann., Est. & Trusts § 13-201(c)(2). Commonly, the appointment of a guardian ad litem comes after settlement and usually in a joint or unopposed motion because individuals like Mr. Byrd require management of the proceeds of any lawsuit. *E.g.*, *Lee v. United States*, No. 5:18-cv-00088-JKP (W.D. Tex. Nov. 25, 2020) (Dkt. No. 59) (finding disability and

---

[3] Regarding this statute, the Government argues that Maryland law requires a state-court adjudication. Here again, the Government adds words that are not there. This time, the Government asks this Court to add the word "state" into a statute that simply says, "judged by a court." Dkt. No. 33, at 3 n.1 (citing Md. Code Ann., Est. & Trusts § 13-101(f)); *see also AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d at 1049 (the courts obligation under Rule 17(c) does not arise "until after a determination of competency has been made **by the court in which the issue is raised**.") (emphasis added).

approving of the settlement); *id.* (Dkt. No. 38) (motion and accompanying text order appointing a guardian ad litem).

Under the second test, section 13-705(b) allows for the appointment of a guardian when two elements are met: (1) the individual is unable to "communicate responsible decisions," including provisions of healthcare, food, clothing and shelter because of a mental disability; and (2) no less restrictive form of intervention is available consistent with the person's welfare and safety. First, *all* the evidence before the Court establishes Mr. Byrd has severely impaired comprehension and his stroke prevents him from living independently. Dkt. No. 26-1, at 2 ¶ 5–6 (Altman Declaration); *see also* Dkt. No. 30, at 8–9 (context to the Government's lone medical exhibit and attaching the remainder of that record as Dkt. No. 30-5). That's because Mr. Byrd's disability has very serious health and safety concerns. For example, Mr. Byrd should not drive, not just because of his memory. The inability to quickly read and immediately comprehend road signs places him as a danger to himself and others on the road. Allowing Mr. Byrd to use a stove represents a fire risk to himself and his family. *Id.* Since filing Dr. Altman's declaration, Plaintiff has disclosed his experts under the Court's scheduling order. Dr. Altman provided a 45-page report detailing his opinions on the extensive medical care and supervision that Mr. Byrd needs as a function of his stroke. *See* Dkt. No. 36-11, at 31–34 ("Projected Health Care Needs").

And under the second prong of section 13-705(b)(2), there's no evidence to dispute Dr. Altman's conclusion that Mr. Byrd needs supervision and management of his affairs, and no less restrictive form of intervention is consistent with his welfare and safety. Dkt. No. 26-1, at 2 ¶ 7.

## CONCLUSION

The Court should make a decision based on the evidence before it. And the record before this Court shows a man with a disability that requires guardian ad litem for the limited purpose of managing this lawsuit. But should the Court decide against issuing such an order, Rule 17(a) requires a reasonable time for ratification, joinder, or substitution of the real party, relating back to the filing of the complaint.

Respectfully Submitted,

/s/ Tom Jacob
**TOM JACOB**, *pro hac vice*
   tjacob@nationaltriallaw.com
   Texas State Bar #24069981
**STEVEN HASPEL**, *pro hac vice*
   shaspel@nationaltriallaw.com
   Texas State Bar #24109981
**WHITEHURST, HARKNESS,**
   **BREES, CHENG, ALSAFFAR,**
   **HIGGINBOTHAM, & JACOB P.L.L.C.**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

**NELSON O. TYRONE, III**
   nelson@tyronelaw.com
   Georgia State Bar #721189
**TYRONE LAW FIRM**
   1201 Peachtree Street N.E.
   Atlanta GA, 30361
   (404) 377-0017 (o)
   (404) 249-6764 (f)

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE & COMPLIANCE

By my signature below, I certify that this pleading was prepared using Century Schoolbook at 13 point size. Further, I certify that a copy of this pleading, Plaintiff's Sur-Surreply to Government's Surreply to Plaintiff's Motion, has been sent to the following on March 1, 2021 via the Court's CM/ECF notice system.

**BYUNG J. PAK**
   UNITED STATES ATTORNEY
**TRISHANDA L. TREADWELL**
   ASSISTANT U.S. ATTORNEY
   Georgia Bar No. 356896
   trish.treadwell@usdoj.gov
   600 Richard B. Russell Federal Bldg.
   75 Ted Turner Drive, S.W.
   Atlanta, Georgia 30303
   (404) 581-6000
   (404) 581-6150 facsimile


/s/ Tom Jacob
Tom Jacob
WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.