IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LORENZO BYRD, *on behalf of* TOMMY L. BYRD*, an incompetent adult*, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| UNITED STATES OF AMERICA, | : : : : | CIVIL ACTION NO. 1:20-CV-03090-LMM |
| Defendant. | : | |

## ORDER

This case comes before the Court on Plaintiff Lorenzo Byrd's Motion to Appoint Guardian ad Litem [26] and Motion to Strike [42]. After due consideration, the Court enters the following Order.

## I.    BACKGROUND

This is a medical malpractice case brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"). The Complaint alleges that medical staff and employees at the Atlanta Veterans Affairs Medical Center ("Atlanta VA") failed to properly diagnose and treat Tommy Byrd for a stroke in the days following a November 2016 procedure on his spine. See generally Dkt.

No. [1] ¶¶ 5.1–6.2. This case arises from the injuries and damages Tommy Byrd allegedly suffered as a result. Id. ¶¶ 6.1–7.2.

Lorenzo Byrd is Tommy Byrd's son, and he filed this case on his father's behalf on July 24, 2020. See generally id. Thus, Tommy Byrd is named in the case caption alongside Lorenzo Byrd, the Complaint alleges that Tommy Byrd is an incompetent adult, and the Complaint's allegations relate to—and seek recovery for—Tommy Byrd's allegedly negligent treatment and resulting injuries. See id. ¶¶ 1.2, 5.1–7.2. Presently pending before the Court are Plaintiff's Motion to Appoint Guardian ad Litem, see Dkt. No. [26], and Motion to Strike, see Dkt. No. [42]. The Court addresses those Motions, and the additional facts relevant to each Motion, in turn.

## II.    Plaintiff's Motion to Appoint Guardian ad Litem

Plaintiff Lorenzo Byrd requests that the Court appoint him as Tommy Byrd's guardian ad litem under Rule 17(c), or, alternatively, permit Tommy Byrd to be substituted into this action as the real party in interest under Rule 17(a). Dkt. No. [26] at 1, 5.

### A. Background

In January 2021, a disagreement arose between the parties regarding the existence of subject matter jurisdiction in this case. Id. at 2; Dkt. No. [28] at 3. The circumstances of this disagreement—which served as the impetus for Plaintiff's Motion to Appoint Guardian ad Litem—appear to be largely undisputed. According to the parties, Defendant contacted Plaintiff's counsel on

2

January 23, 2021, after reviewing some of Plaintiff's written discovery responses. Dkt. Nos. [26] at 2; [28] at 3. These responses apparently indicated that Tommy Byrd had not been formally declared incompetent and that Lorenzo Byrd did not have documentation appointing him to be Tommy Byrd's legal representative. See Dkt. Nos. [26] at 2; [30] at 10. In contacting Plaintiff, Defendant maintained that the absence of this documentation created a subject matter jurisdiction problem for this case. See Dkt. Nos. [26] at 2; [28] at 3; [28-2] ¶¶ 8–10. The parties were unable to reach a resolution, and, two days after the issue was raised, Plaintiff filed its present Motion seeking appointment of Lorenzo Byrd as Tommy Byrd's guardian ad litem, or, alternatively, to substitute Tommy Byrd as the real party in interest. Dkt. No. [26]. Defendant opposes Plaintiff's Motion. Dkt. No. [28].

### B. Legal Standard

Federal Rule of Civil Procedure 17(c) contains provisions relating to suits by minor or incompetent individuals. Of relevance here, Rule 17(c)(2) states, "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). Furthermore, Rule 17(c)(2) states that a court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Id.; see also Burke v. Smith, 252 F.3d 1260, 1264 (11th Cir. 2001) ("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall

make such other order as it deems proper for the protection of the infant or incompetent person." (citing Fed. R. Civ. P. 17(c))).

"It is well established that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c) of the Federal Rules of Civil Procedure." Burke, 252 F.3d at 1264 (quotation marks and citation omitted; alteration adopted). Whether to appoint a guardian is left to the discretion of the district court. McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 470 (11th Cir. 2010) (citing Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196 (2d Cir. 2003)). Under Rule 17(a), which pertains to the issue of real party in interest and is the rule under which Plaintiff seeks alternative relief, a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

## C. Analysis

Defendant makes two primary arguments in opposing Plaintiff's Motion. First, Defendant asserts that Rule 17(c) is predicated on a finding that the plaintiff is incompetent *and* that the rule presumes that appointment of a guardian or next friend is for the protection of the person actually bringing suit. See Dkt. No. [28] at 8–12. To this end, Defendant argues that (1) Tommy Byrd has not been adjudicated incompetent and (2) because Lorenzo Byrd brought this suit on behalf of Tommy Byrd and is technically the named plaintiff, Tommy Byrd is neither the plaintiff nor a party to this lawsuit at all. Id. ("Mr. [Tommy]

4

Byrd is not a party to this lawsuit. As is clear from the caption, the Plaintiff is Lorenzo Byrd. Mr. [Tommy] Byrd would need to be both incompetent and a party for the Court to exercise is power pursuant to Rule 17(c).”). Thus, Defendant maintains that because Tommy Byrd has neither been adjudicated incompetent nor is the named plaintiff, the Court cannot use Rule 17(c) to appoint a guardian ad litem for him. Id. at 12 (“It is unclear how the Court can act under [Rule 17] in the absence of those two fundamental requirements.”).

Second, and based on the premise that Tommy Byrd is not a party to this action and that Lorenzo Byrd is not his father’s proper legal representative, Defendant not only argues that Plaintiff’s Motion should be denied, but also that Lorenzo Byrd lacks standing and that the Court must dismiss this case for lack of subject matter jurisdiction. Dkt. No. [28] at 1–2, 7.[1]

In Plaintiff’s opening brief, and then largely in response to Defendant’s arguments above, Plaintiff argues that Lorenzo Byrd is the proper “next friend” of Tommy Byrd. Dkt. Nos. [26] at 3–4; [37] at 5–7. Plaintiff relies upon this argument to demonstrate that (1) Tommy Byrd is a party to this action and (2) that Lorenzo Byrd has standing to bring this case. Dkt. Nos. [30] at 5; [37] at 5–7.

[1] Defendant also argues at times that the FTCA claim should be dismissed due to alleged deficiencies regarding Tommy Byrd’s administrative claim. See, e.g., Dkt. No. [28] at 8. The Court does not consider these arguments because they are improperly raised in response to Plaintiff’s Motion, which only concerns whether Lorenzo Byrd should be appointed as the guardian ad litem for this case or whether Tommy Byrd should be substituted in as the real party in interest. If Defendant wishes to pursue these arguments and seek dismissal of certain claims, Defendant may do so properly in its own dispositive motion.

For instance, Plaintiff argues that Tommy Byrd is a party to this lawsuit because Lorenzo Byrd is proceeding as his next friend and filed suit on his behalf—and that appointment of a guardian ad litem under Rule 17(c)(2) is therefore appropriate. Dkt. No. [30] at 5. Similarly, Plaintiff maintains that he has standing because he is Tommy Byrd's next friend—and that, in any event, a next friend's standing is not a separate jurisdictional issue from whether the real party in interest (Tommy Byrd) has standing. Dkt. No. [37] at 6 (citing T.W. by Enk v. Brophy, 124 F.3d 893 (7th Cir. 1997)).

The Court begins by outlining these arguments because they suggest a possible point of misunderstanding between the parties, and they also illustrate why Plaintiff's request to be appointed Tommy Byrd's guardian ad litem is potentially redundant under the circumstances. As noted above, this suit was initiated by Lorenzo Byrd "on behalf of Tommy L. Byrd, an incompetent adult." Dkt. No. [1]. Thus, Plaintiff has requested to be appointed as guardian ad litem under Rule 17(c)(2) yet simultaneously argues that he is already the proper next friend of Tommy Byrd. However, for all practical purposes there is no substantive difference between a guardian ad litem and next friend. See, e.g. Scannavino v. Fla. Dept. of Corr., 242 F.R.D. 662, 666 n.5 (M.D. Fla. 2007) (explaining that an incompetent litigant technically sues by a "next friend" and defends by a "guardian ad litem," but that "because Rule 17(c) appears to have abandoned this distinction, this order uses 'guardian ad litem' to include 'next friend[]'"); see also 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 1572 (3d. ed. 2021) ("Whatever the precise difference may have been, it was only formal, and the functions of [guardians ad litem and next friends] were really much the same. . . . Thus the drafters of the rules eliminated this distinction and Rule 17(c)(2) permits suit to be brought on behalf of an infant or incompetent by either." (footnote omitted)).

Moreover, as illustrated by the Eleventh Circuit's analysis in Burke v. Smith, 252 F.3d 1260 (11th Cir. 2001), where a minor or incompetent individual is already adequately represented by a next friend, there is no need to separately appoint a guardian ad litem. See 252 F.3d at 1264. In Burke, the Eleventh Circuit explained that, because a mother had filed suit on her minor child's behalf and was acting as her next friend, the district court had not erred by not appointing a different guardian ad litem for the minor child:

> Rule 17(c) does not require that a district court appoint a guardian ad litem in all cases. Rather, 'Rule 17(c) authorizes the district court to appoint a guardian ad litem for an infant . . . *not otherwise represented in an action* . . . .' In the present case, [the minor] was 'otherwise represented' by her mother who brought this action on her behalf. Thus, Rule 17(c) did not require the court to appoint a guardian ad litem.

Burke, 252 F.3d at 1264 (citations and internal quotation marks omitted). Here, Lorenzo Byrd maintains that he already filed suit as Tommy Byrd's next friend and that he is indeed a proper next friend. Dkt. Nos. [26] at 3–4; [30] at 5. But if, as Plaintiff argues, Lorenzo Byrd is already a suitable next friend for Tommy Byrd, then Lorenzo's appointment as guardian ad litem would be redundant and unnecessary. See Burke, 252 F.3d at 1264. At the same time, if the record does

7

not support a finding that Tommy Byrd is incompetent (and thus is not in need of a next friend or guardian ad litem to represent him in this action), then appointment of a guardian ad litem would also be improper under Rule 17(c)(2) given that the rule only applies to "minor or incompetent" individuals. For this reason, the Court will first consider whether Plaintiff's argument is correct—namely that he is the appropriate and suitable next friend of Tommy Byrd. For the reasons discussed below, this analysis will also resolve Defendant's arguments that Lorenzo Byrd lacks standing and that the Court must dismiss the case for lack of subject matter jurisdiction.

To sue as a next friend, an individual must satisfy two requirements. First, the would-be next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." Sanchez-Velasco v. Sec. of the Dept. of Corr., 287 F.3d 1015, 1025 (11th Cir. 2002) (quoting Whitmore v. Arkansas, 495 U.S. 149, 163 (1990)).[2] "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate," which typically requires the next friend to demonstrate "some

---

[2] Defendant suggests that the next friend test established by the Supreme Court in Whitmore and adopted by the Eleventh Circuit in Haley and Sanchez-Velasco is not applicable because those decisions were made in the habeas corpus context. Dkt. No. [33] at 12–13. However, as Plaintiff correctly argues, federal courts have relied on this test and its two requirements for determining next friend standing in general civil litigation in federal court. See, e.g., Gonzalez ex rel. Gonzalez v. Reno, 86 F. Supp. 2d 1167, 1184–85 (S.D. Fla. 2000), aff'd sub nom. Gonzalez v. Reno, 212 F.3d 1338 (11th Cir. 2000).

significant relationship with the real party in interest." Id.; see also Ford v. Haley, 195 F.3d 603, 624 (11th Cir. 1999) (noting that the next friend "must show some relationship or other evidence that demonstrates the next friend is truly dedicated to the interests of the real party in interest").

Turning to the first requirement, Plaintiff argues that he is a proper next friend for Tommy Byrd because Tommy is incompetent as a result of suffering a stroke. Dkt. No. [26] at 3. Plaintiff explains that the stroke has caused Tommy to suffer from fluent aphasia and diminished language comprehension, which impede his ability to communicate effectively and as needed to maintain a lawsuit. Id.; Dkt. No. [30] at 8.

"The term 'incompetent' in Rule 17(c)(2) generally means a person who lacks the capacity to litigate under the law of his state of domicile." Williams v. Rickman, 759 F. App'x 849, 851 (11th Cir. 2019) (per curiam) (citing Thomas v. Humfield, 916 F.2d 1032 (5th Cir. 1990)). As a threshold matter, Defendant argues that because Tommy was not previously adjudicated incompetent by a state court, he simply cannot be considered incompetent under Rule 17(c). Dkt. Nos. [28] at 8; [33] at 3. In essence, Defendant suggests that this Court is unable to make a competency determination for the purposes of Rule 17 (and this lawsuit) absent a state court's adjudication on the matter. Dkt. Nos. [28] at 8–11; [33] at 3.

The Court disagrees with this conclusion. The weight of authority indicates that federal courts are empowered to make a competency determination and are

not constrained by state procedure in doing so. Bodnar v. Bodnar, 441 F.2d 1103, 1104 (5th Cir. 1971) ("A trial Court is not powerless to ascertain whether a litigant is competent and, if it finds that he is not, to appoint a guardian ad litem.") [3]; Thomas, 916 F.2d at 1035 ("[W]e reject the notion that in determining whether a person is competent to sue in federal court a federal judge must use the state's procedures for determining competency or capacity."). In fact, even some of the case law cited by Defendant in support of its argument demonstrates that federal courts are able to make competency determinations irrespective of state procedure. Sanders ex rel. Rayl v. Kan. Dept. of Soc. & Rehab. Servs., 317 F. Supp. 2d 1233, 1239 (D. Kan. 2004) ("The court nonetheless recognizes that it is []not bound by state procedures for determining competency, and that there may be an occasion which compels a federal court to make a finding of incompetence, independent of a state court[]." (citations omitted)).

Though the Court finds that it is able to make a determination of Tommy Byrd's competence to litigate, the question remains whether the record in this case supports a finding that Tommy Byrd is incompetent such that he needs a guardian ad litem or next friend. In making this determination, and as previously noted, the Court looks to the law of Tommy Byrd's domicile. Williams, 759 F. App'x at 851. Despite some initial disagreement as to which state's law should

---

[3] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

apply in this case, there appears to ultimately be no dispute that Tommy Byrd is domiciled in Maryland, and so the Court looks to Maryland law to resolve the issue of Tommy Byrd's competence. See Dkt. Nos. [33] at 2–4; [37] at 1.

The Fourth Circuit has addressed the test for mental incompetence under Maryland law and, in doing so, emphasized that the determination of an individual's competence turns on a consideration of that person's "practical ability to manage his or her own affairs":

> Parties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability. Certainly the rule contemplates by 'incompetence' something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders. *What the rule undoubtedly contemplates is that form of mental deficiency which—whether or not accompanied by other forms of personality disorder—affects the person's practical ability 'to manage his or her own affairs.'* This is the general test applied by the civil law for making adjudications of 'incompetency' for a variety of purposes. *It is the test in Maryland.* See Md. Est. & Trusts Code Ann. § 13–201(c)(1) ('unable to manage his property and affairs effectively because of . . . mental disability . . .'). It is the test we have applied to determine whether a party was 'incompetent' to defend without representation in civil litigation.

Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir. 1983) (emphasis added). Here, Plaintiff has submitted the declaration of Dr. James Altman, a board-certified neurologist who examined Tommy Byrd on October 7, 2020, and reviewed his medical records. Dkt. No. [26-1] ¶¶ 2–3. Dr. Altman states that, following Tommy's stroke, Tommy now lives with his brother and requires assistance for common household tasks such as cooking and laundry. Id. ¶ 4. Tommy also cannot drive due to issues with his memory, and he "experiences confusion and

frustration with money transactions and relies on his family to manage his finances." Id. Dr. Altman also states that Tommy "continues to experience aphasia, memory deficits, and impaired comprehension," which "preclude Mr. Byrd from living independently." Id. ¶ 5. Further, Dr. Altman notes that the fluent aphasia that still affects Tommy as a result of his stroke "affects all language modalities with severely impaired comprehension," and that, due to his stroke and the cognitive disabilities resulting therefrom, "[Tommy] lacks sufficient ability to comprehend and communicate responsible decisions concerning his person" and "needs supervision during waking hours and management of his affairs." Id. ¶¶ 6–7.

In response, Defendant suggests that Tommy Byrd's medical records from earlier examinations call Dr. Altman's conclusions—and Tommy's purported incompetence—into question. [4] Dkt. No. [28] at 10 n.3. Defendant notes that

---

[4] It is unclear whether Defendant's position is that Tommy Byrd is in fact competent, or whether Defendant's position is simply that (1) Tommy was never adjudicated incompetent by a state court and (2) that the record does not establish his incompetence. See, e.g., Dkt. Nos. [28] at 10 (acknowledging that "Mr. Byrd has memory and auditory comprehension problems as a result of his 2016 stroke, but he has not been adjudicated incompetent"); [33] at 10 n.5 ("Defendant has taken no position on Mr. Byrd's competence at this time."). However, Defendant does argue that Plaintiff has himself presented conflicting accounts of whether Tommy is incapacitated. See, e.g., Dkt. No. [33] at 2–3, 10. In response to this general line of argument, Defendant explains, "Mr. Tommy Byrd's incapacity under Maryland law does not rely on his intellectual incapacity. Instead, his short-term memory problems and delayed comprehension require a representative to help him pursue his rights in this Court." Dkt. No. [37] at 7 n.2. The Court does not find that this description is inconsistent with a finding that Tommy's practical ability to "manage his own affairs" is significantly affected by the cognitive disabilities noted in the record.

Tommy's records from a July 1, 2019 examination at the Baltimore Veterans'

Affairs Medical Center stated the following:

> [The patient] stated he is doing well, no acute stressors. Stated he gets along with his brother, as he goes to work and leaves him alone most of the time. Reported appetite and sleep were good. Stated he feels like his thoughts are coming to him better and more quickly now. Stated he can understand what people are saying better which makes him feel more comfortable with himself and others.

Dkt. No. [28-3] at 1. However, as Plaintiff notes, this record contains other notes

indicating that problems with Tommy's comprehension and communication

abilities were indeed observed and documented during this July 1, 2019

examination. The following description appears under a heading titled

"cognition" in the examination notes:

> Declined to do the MOCA because it makes [Tommy] upset. Had difficulty understanding what was being told. He had an idea but couldn't express himself and it took longer to understand questions. He is able to express himself but had difficulty processing what others said. 1/3 delayed recall. Could not spell 'HOUSE' backwards, or do serial 7's. Took much encouragement to even ask him to do these 3 tests. However, he remembered our conversation at our last session.

Dkt. No. [30-5] at 1. This same record also indicates that Tommy's DSM-5

diagnosis includes "[m]ajor neurocognitive disorder due to vascular etiology." Id.

Further, Plaintiff points to another record from the Baltimore VA which, though

suggesting that Tommy was able to answer some "yes/no questions" about his

personal details, nevertheless notes that he has fluent aphasia that "affect[s] all

language modalities with severely impaired comprehension." Dkt. No. [30-6] at 1.

Upon careful review, the Court finds that the totality of the record indicates that Tommy Byrd's "practical ability to manage his own affairs" is significantly compromised by the ongoing cognitive disabilities he experiences as a result of his 2016 stroke. Hudnall, 800 F.2d at 385 (quotation marks omitted). First, after the October 2020 examination, Dr. Altman noted that Tommy requires supervision and assistance in managing money and performing household tasks (and is unable to drive due to memory issues), and that Tommy ultimately "lacks sufficient ability to comprehend and communicate responsible decisions concerning his person." Dkt. No. [26-1] ¶¶ 4–7. Further, as detailed above and argued by Plaintiff, the 2019 medical record cited by Defendant to rebut Dr. Altman's conclusions nevertheless contains descriptions of Tommy's comprehension and processing abilities that largely corroborate Dr. Altman's testimony, even though some parts of that record indicate that Tommy's ability to "understand what people are saying" has gotten "better" and that he spends time at home alone when his brother goes to work. Compare Dkt. No. [28-3] with Dkt. No. [30-5] (noting that Tommy had difficulty understanding what he was being told in the appointment, had ideas but could not express himself, and could not complete cognitive tasks such as spelling "HOUSE" backwards). Finally, to the extent Defendant argues that a finding of incompetence is not justified because Tommy is not sufficiently (or entirely) incapacitated, see Dkt. No. [33] at 10–11,[5]

---

[5] In this way, Defendant seeks to distinguish this case from John v. Royal Caribbean Cruises, Ltd., No. 07-22766-CIV-JORDAN, 2008 WL 11407174 (S.D.

the Court is not persuaded that Maryland law requires a showing of complete functional incapacity in order for an individual to be considered "incompetent" for the purposes of maintaining a lawsuit. See Hudnall, 800 F.2d at 385 ("What the rule undoubtedly contemplates is that form of mental deficiency which . . . *affects* the person's *practical* ability 'to manage his or her own affairs.'" (emphasis added)).

Turning to the second requirement, Lorenzo Byrd must demonstrate that he is "truly dedicated to the best interests" of Tommy Byrd, which often also entails showing that he has a "significant relationship" with Tommy. See Sanchez-Velasco, 287 F.3d at 1025. The "true dedication" test is sometimes satisfied simply by a close family member or relative seeking to act as the real party in interest's next friend. See Harris v. Buckhorn, 545 F. App'x 862, 863 (11th Cir. 2013); see also, e.g., John, 2008 WL 11407174, at *2 (holding that mother who was the primary caregiver for incapacitated adult daughter was a sufficient next friend). The Eleventh Circuit has also suggested that courts should consider whether the purported next friend is the "most logical" individual to litigate the real party's case. Harris, 545 F. App'x at 863–64. In this case, Lorenzo Byrd is Tommy Byrd's adult son. Dkt. No. [26-2] ¶ 2. Lorenzo avers in his declaration that, since his father's stroke, he has exercised a power of attorney

---

Fla. June 11, 2008), a case in which a court in this Circuit applied the Whitmore test and determined that a mother was a proper next friend for her adult daughter who suffered aphasia and paralysis as a result of a stroke.

through which he manages his father's legal affairs. Id. As is discussed in the parties' briefing, Lorenzo appears to have been involved in filing his father's claim at the administrative level. See Dkt. Nos. [28] at 2; [30] at 4; see also [28-1] at 1 (listing "Lorenzo Byrd, on behalf of Tommy L. Byrd" under section that required the name and address of the claimant and claimant's representative). Further, Lorenzo attests that he traveled to Atlanta when his father's stroke occurred and helped his father relocate to Maryland, where Lorenzo continues to assist in his father's care and the management of his affairs. Dkt. No. [26-2] ¶ 3. It does not appear that Defendant disputes any of these assertions—Defendant's primary points of argument relate to whether Tommy Byrd is incompetent—and the Court finds there is sufficient indicia in the record that Lorenzo Byrd is truly dedicated to his father's best interests, that he has a significant relationship with his father, and that he is a proper next friend in this case.

Based on the foregoing, the Court finds that Lorenzo Byrd is a proper next friend for Tommy Byrd and may maintain this lawsuit on his behalf. In light of this determination, Plaintiff's request to appoint a guardian ad litem is denied, but only because such an appointment would be redundant given that Tommy Byrd is already adequately represented by Lorenzo Byrd as his next friend.[6] Burke, 252 F.3d at 1264 (noting that the court "shall make such other order as it

---

[6] To the extent the Court denies Plaintiff's request for appointment of a guardian ad litem, this denial is without prejudice; if Plaintiff wishes to seek appointment of a guardian ad litem for other reasons or has other concerns, Plaintiff may file another motion seeking such relief.

deems proper for the protection of the infant or incompetent person" but that appointment of guardian ad litem was not required when minor was "otherwise represented" in the case). Furthermore, because the Court finds that Lorenzo Byrd is a proper next friend, he necessarily has established next-friend standing to pursue this action. [7] Sanchez-Velasco, 287 F.3d at 1025; see also John, 2008 WL 11407174, at *2 (explaining that the allegations in the complaint clearly demonstrated that the mother (next friend) was suing on her daughter's behalf and was not pursuing the case as a separate individual seeking damages for herself).[8]

---

[7] For this reason, the Court need not reach the issue raised in Plaintiff's Sur-Surreply that, even if the Court found that Lorenzo Byrd was not a proper next friend, this determination would not deprive the Court of subject matter jurisdiction because the next friend's standing is not a separate jurisdictional issue from whether the real party in interest has standing. See Dkt. No. [37] at 6 (citing Brophy, 124 F.3d 893); see also 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531 (3d. ed. 2021) ("Confusions of standing with real-party-in-interest doctrine occur with some frequency. . . . A focus on standing may lead a court to refuse application of the ameliorating rules that enable substitution of the real party in interest when the wrong plaintiff filed the action.")

[8] Finally, to the extent Defendant suggests that there is a problem with the case caption because Lorenzo Byrd has filed this case "on behalf of" Tommy Byrd, Defendant does not appear to explain why this makes any substantive difference. See, e.g., Dkt. No. [33] at 14–15. For example, in a case in which the case caption indicated that a mother was suing in her own capacity and "on behalf of" her two minor children (both named in the caption but not specifically identified as plaintiffs), the defendants argued that the case should be dismissed for failure to join the real parties in interest. Pollreis v. Marzolf, 446 F. Supp. 3d 444, 455–57 (W.D. Ark. 2020). The court dismissed this argument, explaining that it "places form over obvious substance" and that "the claims of the real parties in interest are properly before the Court." Id. at 456–57. In any event, and as Plaintiff argues, the Court could not dismiss the case for this reason without giving

### III.   Plaintiff's Motion to Strike

Plaintiff has moved to strike three expert reports filed by Defendant. Dkt. No. [42]. Plaintiff argues that these reports are untimely under the Court's Scheduling Order, Federal Rule of Civil Procedure 26(a), and Local Rule 26.2(C) and should therefore be struck. Id. at 1. Defendant opposes Plaintiff's Motion. Dkt. No. [55].

#### A. Background

Under the Court's Scheduling Order, the deadline for the parties to disclose their respective experts was originally February 1, 2021, but the Court later extended that deadline to February 22, 2021. Dkt. Nos. [19] at 10; [25]. On February 22, 2021, Plaintiff disclosed six experts and their reports, see Dkt. No. [36], and Defendant disclosed two experts—Dr. Wendy Wright and Kimberly Kushner—and their respective reports. Dkt. Nos. [34, 35]. Roughly two months later on April 23, 2021, Defendant disclosed Wright's and Kushner's rebuttal reports. Dkt. Nos. [40, 41]. At this time, Defendant also disclosed Dr. Raul Nogueira as an expert and filed his report. Dkt. No. [39]. Defendant argues that Nogueira's report is also a rebuttal report. Dkt. No. [55] at 1, 4, 9 n. 5.

---

Plaintiff an opportunity to amend. See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."); see also John, 2008 WL 11407174, at *3.

### B. Legal Standard

"Federal Rule of Civil Procedure 26 requires that '[a] party must make [expert witness] disclosures at the times and in the sequence the court orders.'" Guevara v. NCL (Bah.) Ltd., 920 F.3d 710, 717 (11th Cir. 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)). Absent a court order or other stipulation, Rule 26(a)(2)(D) requires that evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" be disclosed "within 30 days after the other party's disclosure." Fed. R. Civ. P. (26)(a)(2)(D)(ii).

"If a party violates Rule 26(a) or (e), Rule 37(c) provides for the exclusion of the expert evidence 'unless the failure was substantially justified or is harmless.'" Guevara, 920 F.3d at 718 (quoting Fed. R. Civ. P. 37(c)(1)); see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344, 1365 (11th Cir. 2008) ("Under Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) *unless the failure is substantially justified or is harmless*." (citations and footnote omitted)). Whether to exclude expert testimony after untimely disclosure is left to the discretion of the district court. Romero v. Drummond Co., Inc., 552 F.3d 1303, 1313–14 (11th Cir. 2008). When considering the possible exclusion of a late-disclosed witness, courts consider (1) "the explanation for the failure to disclose the witness," (2) "the importance of the testimony," and (3) "the prejudice to the opposing party if the witness had been allowed to testify." Knight

ex rel. Kerr v. Miami-Dade Cnty., 856 F.3d 795, 811 (11th Cir. 2017) (quoting

Romero, 552 F.3d at 1321).

### C. Analysis

Plaintiff makes two arguments for striking these three expert reports. First,

Plaintiff argues that Defendant failed to disclose Dr. Nogueira as an expert by

February 22, 2021, which was the extended deadline for expert disclosure. Dkt.

No. [42] at 3 (citing Dkt. Nos. [19, 25]). Second, Plaintiff argues that Dr. Wright's

and Kushner's rebuttal reports were due thirty days after the February 22, 2021

expert disclosures, but these reports were instead filed late on April 23, 2021. Id.

at 7–8 (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)).

With regard to Plaintiff's argument that Dr. Nogueira should have been

disclosed by the initial expert deadline of February 22, 2021, Defendant has

argued that Dr. Nogueira's testimony is, in fact, being offered as rebuttal

evidence. Defendant states that Dr. Nogueira was added later as an expert

because (1) Plaintiff's expert, Dr. Kumar, cites Dr. Nogueira's research in his

expert report, and (2) Defendant therefore could not have initially anticipated the

specific need for Dr. Nogueira's testimony. Dkt. No. [55] at 4, 9 n.5. The Court

agrees that Dr. Nogueira's testimony is being used to rebut some of Plaintiff's

expert's testimony and that Defendant could not have anticipated the need for

this testimony before the initial expert disclosure deadline of February 22, 2021.

Accordingly, Dr. Nogueira should have been disclosed as an expert witness (along

with his report) by March 24, 2021, thirty days after the February 22, 2021

disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Nevertheless, it is undisputed that Defendant failed to disclose Dr.

Nogueira as an expert—and failed to file all three of its rebuttal reports, including

that of Dr. Nogueira—by March 24, 2021, as required by Rule 26(a)(2)(D)(ii).

Instead, Defendant disclosed Dr. Nogueira and his report, along with Dr.

Wright's and Kushner's rebuttal reports, on April 23, 2021. Dkt. Nos. [39, 40, 41].

Defendant offers no satisfactory justification for its failure to timely disclose

these reports. In fact, Defendant admits that it "refrained from further discovery

efforts" and simply "failed to consider that rebuttal reports had to be filed by

March 24, 2021" apparently because Defendant anticipated a favorable ruling on

Plaintiff's Motion to Appoint Guardian ad Litem, which remained pending at the

time these disclosures were due. Dkt. No. [55] at 7 & n.4. Defendant attempts to

argue that—despite the fact that its rebuttal disclosures clearly violated the March

24, 2021 deadline set by Federal Rule of Civil Procedure 26(a)(2)(D)(ii)—its April

23, 2021 disclosures were nevertheless justified because they were in compliance

with Local Rule 26.2(C). Dkt. No. [55] at 2–3, 6 (citing LR 26.2(C), NDGa.'s

requirement that experts be designated "sufficiently early in the discovery period

to permit the opposing party to depose the expert"). However, Defendant's

suggestion that obvious noncompliance with the Federal Rules of Civil Procedure

could be construed as technical compliance with this Court's Local Rules—and

therefore justified—is entirely unpersuasive. See LR 1.1(C), NDGa. ("These rules

*supplement* the Federal Rules of Civil Procedure and shall be construed as to be *consistent* with those Rules . . . ." (emphasis added)).

Still, the Court must consider whether Defendant's late disclosure was harmless to Plaintiff. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted). Defendant argues that its late disclosure is harmless to Plaintiff. Defendant argues that Plaintiff will not suffer the most obvious form of harm caused by late disclosures, which is the inability to adequately prepare one's case by deposing the witness during the discovery period. See Dkt. No. [55] at 10. To this end, Defendant notes that—due in part to scheduling difficulties with experts for both parties—the Court has already extended the discovery period to July 16, 2021, to allow for depositions of each party's experts. See Dkt. No. [55] at 3 n.2, 11; see also Dkt. Nos. [51, 52]. Moreover, Defendant argues, and the Court agrees, that Dr. Nogueira's testimony does not impose an outsized burden on Plaintiff given the medical issues, procedures, and expert testimony that is at issue in this case. Dkt. No. [55] at 11–12.

Ultimately, the Court agrees that Defendant's late disclosure is harmless to Plaintiff under the present circumstances. Though Defendant's disclosure of these three reports was not timely under Federal Rule of Civil Procedure 26(a)(2)(D), they were nevertheless filed only one month after the March 24, 2021 deadline and with six weeks still remaining in the discovery period, which

was subsequently extended by another six weeks to July 16, 2021. Dkt. No. [52].
Even if the discovery period must be moderately extended again to allow for the
completion of expert depositions and any necessary follow-up discovery, Plaintiff
would still be able to depose these witnesses and adequately prepare his case.
And though Plaintiff cites Luxottica Group, S.P.A v. Airport Mini Mall, LLC, No.
1-15-cv-1422-AT, 2017 WL 1806384 (N.D. Ga. Feb. 1, 2017), to argue that *any*
delay created by a party's failure to timely disclose experts is "itself prejudice
warranting exclusion of the expert from testifying at trial," see Dkt. No. [42] at 6,
what the court in Luxottica actually stated was that "the delay created by a party's
failure to timely disclose her experts *during the discovery period* is itself
prejudice warranting exclusion of the expert from testifying at trial." Luxottica,
2017 WL 1806384, at *3 (emphasis added).[9] Here, Defendant disclosed its
experts and their rebuttal reports during the discovery period, albeit thirty days
late.[10] Accordingly, and for the reasons discussed above, Plaintiff's Motion to
Strike is denied.

---

[9] Plaintiff also relies on Atwater v. National Football League Players Ass'n, No.
1:06-cv-1510-JEC, 2008 WL 11337675 (N.D. Ga. May 1, 2008), to argue that the
Court would be justified in striking Defendant's expert reports even though they
were filed within the discovery period. Dkt. No. [42] at 5; [56] at 2. However, in
Atwater, the court denied an initial motion to strike two untimely disclosed
experts and only granted a later motion to strike when the plaintiffs subsequently
attempted to disclose a third late expert. See Atwater, 2008 WL 11337675, at *1–
2.

[10] Plaintiff also argues that he will be harmed by a discovery extension because it
would necessarily delay his opportunity for a timely trial, but the Court is not
persuaded that the hypothetical delay of a potential trial constitutes harm to

## IV.  CONCLUSION

In accordance with the foregoing, Plaintiff's Motion to Appoint Guardian ad Litem [26] is **DENIED without prejudice** because Lorenzo Byrd may proceed as Tommy Byrd's next friend without additionally being appointed guardian ad litem.

Second, and for the reasons discussed above, Plaintiff's Motion to Strike [42] is **DENIED**. If the parties need additional time to complete discovery, including expert depositions and related follow-up discovery, they may raise these issues in a later motion.

**IT IS SO ORDERED** this 19th day of July, 2021.

**Leigh Martin May**
**United States District Judge**

---

Plaintiff, not least because it is unknown at this stage of the case whether a trial will even be necessary. Dkt. No. [56] at 4.