**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORIGA
ATLANTA DIVISION**

| | |
|---|---|
| **LORENZO BYRD**, on behalf of **TOMMY L. BYRD**, an incompetent adult,<br><br>    Plaintiff<br><br>vs.<br><br>**UNITED STATES OF AMERICA**,<br><br>    Defendant | **NO. 1:20-CV-03090-LMM** |

## DECLARATION OF DANIEL MINKOW

1. I, Daniel Minkow, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the statements below are true and correct. I am over the age of eighteen and otherwise competent to give this declaration. This declaration is based on my personal knowledge and my review of the Atlanta VAMC's medical records for Tommy L. Byrd from November 15, 2016 to November 25, 2016.

2. I am an occupational therapist. I am currently employed at the Atlanta VAMC. I worked as an occupational therapist at the Atlanta VAMC in November 2016 as well.

3. In November 2016, I provided occupational therapy to Mr. Byrd on several occasions, beginning November 16, 2016. I saw Mr. Byrd almost daily

during this period. Mr. Byrd had had a major back surgery, and my goals were to get Mr. Byrd back to his preoperative level of independence with activities of daily living (ADLs). This included being able to sit up in bed, transfer from bed to standing and back, sit in a chair, get on/off the toilet, and complete grooming activities. I did not conduct neurological exams on Mr. Byrd.

4. Many of the physical therapy sessions were conducted in concert with the physical therapist, Debbie DiBona.

5. From the first session I had with him, Mr. Byrd appeared confused and, at times, did not seem to understand what I was asking of him. His upper and lower extremities, in light of his recent surgery, were functioning. He did not demonstrate right- or left-side weakness but exhibited good strength bilaterally.

6. Based on his initial functioning, I recommended that Mr. Byrd be discharged to a subacute rehabilitation facility where he could continue occupational therapy several times per week to address ADL retraining. Alternatively, when he was medically stable, he could be discharged home with home healthcare. It was Mr. Byrd's clear preference to go home.

7. Mr. Byrd's state of confusion was present each time I worked with him, including November 16, 17, 18, 22, and 23.

8. On November 22, 2016, I saw Mr. Byrd in the morning—again, along with physical therapist Ms. DiBona. My note for that session included what I considered an example of his confused state when he would talk about wanting to go home ("What do I need to do to get home?"), but then refuse to stay out of bed ("I just want to get back in bed!"). At this time, seven days post-op, Mr. Byrd still required cues to complete basic grooming activities. For example, I would tell him to brush his teeth and also show him his toothbrush. I did believe that he was improving physically, but his continued confusion made the therapy sessions challenging. At that point, on November 22, 2016, I recommended that Mr. Byrd could continue occupational therapy at home when he was medically stable. His continuing issues with confusion and comprehension meant, to me, that he may not be sufficiently stable to go home.

9. I saw Mr. Byrd on the morning of November 25, 2016. I did not note any real change in Mr. Byrd's presentation between that day and the prior days.

10. My occupational therapy notes were only intended to report on Mr. Byrd's therapy progress. I was not intending to capture a neurological exam or necessarily document his mental status, although I sometimes noted when he seemed confused or disoriented.

11. At no time during my treatment of Mr. Byrd did I see that he had any signs of having had a stroke like facial drooping, arm or leg weakness, speech or vision issues, or balance/gait issues (unrelated to his back pain and recent surgery). As a result, at no time did I suspect that Mr. Byrd had had a stroke.

12. I understand that Mr. Byrd was diagnosed with a left-hemisphere stroke on November 25, 2016 that caused receptive aphasia. Receptive aphasia, as I now understand it, is consistent with the way Mr. Byrd seemed confused and had difficulty comprehending, often requiring additional cues and further explanation. Yet, at the same time, he could speak in complete sentences and hold basic conversations with me.

13. I was not asked to be deposed in this case.


_____
Daniel Minkow
Occupational Therapist